**2015-5011**

# United States Court of Appeals
### *for the*
# Federal Circuit

---

**DAVID D. GRIFFIN,**

*Petitioner-Appellant*,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

*Respondent-Appellee.*

---

*Appeal from the United States Court of Federal Claims
in 13-VV-280, Judge Eric G. Bruggink.*

---

# REPLY BRIEF FOR PETITIONER-APPELLANT

LISA A. ROQUEMORE
LAW OFFICE OF LISA A. ROQUEMORE
19200 VON KARMAN AVENUE
SUITE 500
IRVINE, CA 92612
(949) 622-5572

*Attorney for Petitioner-Appellant*

DATED FEBRUARY 11, 2015

## CERTIFICATE OF INTEREST

Counsel for the Appellant, David D. Griffin certifies the following:

1.      The full name of every party or amicus represented by me is:

**David D. Griffin.**

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**N/A.**

3.      All parent corporations and any publically held companies that own 10% or more of the stock of the party or amicus curiae represented by me are:

**N/A**

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

**Lisa A Roquemore, Esq., Law Office of Lisa A. Roquemore.**

February 11, 2015

Lisa A. Roquemore
Law Office of Lisa A. Roquemore
19200 Von Karman Ave. Suite 500
Irvine, Ca. 92612
(949) 622-5572

*Counsel of Record for Petitioner-Appellant*
  *DAVID D. GRIFFIN*

i

# TABLE OF CONTENTS

*Page*:

CERTIFICATE OF INTEREST ................................................................................. i

TABLE OF CONTENTS .......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iii

I.    STATEMENT OF RELATED CASES .......................................................... 1

II.   INTRODUCTION ......................................................................................... 1

III.  ARGUMENT ................................................................................................ 3

IV.   CONCLUSION AND RELIEF SOUGHT ................................................... 15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

*Page(s):*

**CASES:**

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*,
    682 F.3d 1003 (Fed. Cir. 2012) ...................................................11

*Cloer v. Sec'y of HHS*,
    675 F.3d 1358 (Fed. Cir. 2012) ...................................................5

*Cmty. for Creative Non-Violence v. Reid*,
    490 U.S. 730 (1989).......................................................................7

*Harris v. Atty. Gen.*,
    657 F. Supp. 2d 1 (D.D.C. 2009)....................................................4

*McGowan v. Sec'y of HHS*,
    31 Fed. Cl. 734 (1994)..........................................................14, 15

*Miller v. Fenton*,
    474 U.S. 104 (1985).....................................................................11

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 318 (1992)...............................................................5, 6, 7, 8

*Suntiger, Inc v. Scientific Research Funding Group*,
    189 F.3d 1327 (Fed. Cir. 1999) ...................................................10

*United States v. American Trucking Ass'ns*,
    310 U.S. 534, 60 S. Ct. 1059 (1940) ...........................................2

*Winstar Corporation v. The United States*,
    64 F.3d 1531 (Fed. Cir. 1995) ....................................................10

**STATUTES:**

5 U.S.C. § 2105(a) (2012)...................................................................*passim*

Copyright Act of 1976,
    17 U.S.C. § 101.............................................................................7, 8

National Childhood Vaccine Injury Act,
    42 U.S.C. § 300aa-11(c), *et seq.*............................................*passim*

## I.   STATEMENT OF RELATED CASES

No appeal of this case has been before any other court.  To the knowledge of the Appellant, no related cases are pending in this or in any other court.

## II.   INTRODUCTION

This case is one of first impression, wherein Petitioner, David Griffin ("Griffin") calls upon, this Federal Circuit to determine statutory language found within Title 42 of the Vaccine Act outlining eligibility to be a Petitioner and participate in a very necessary program-the Vaccine Program.  Griffin argues that the United States Supreme Court rules of statutory construction as well as case law supports his contention that the United States Army ("Army") was a "joint or *de facto* employer" of Griffin.  Substantial and <u>uncontroverted</u> evidence was provided by Petitioner showing that the Army had considerable control over him, including the requirement of vaccination and being fit for duty as well as his "in theater" work activities as Site Manager at Forward Operating Base Rushmore in Afghanistan.  Based upon the (1) evidence presented, (2) legislative intent, (3) rules of statutory construction, and (4) common law agency principles recognizing that an employee can have joint employers, Griffin submitted he was an "Employee of the United States" or a "member of the Armed Forces."  Also, it was undisputed that Griffin is a citizen of the United States.  Griffin argued that interpreting the Vaccine Act as narrowly as Respondent proposed would

systematically exclude a class of United States citizens from being eligible to

participate in the Vaccine Program, despite the fact that they are employees of

United States companies, who support our United States Armed Forces, and are

subject to the Department of Defense requirements, including the obtaining of

certain vaccines.

Judge Bruggink found that Title 5 of the United States Code, defining

federal employee, applied to this case, citing to 5 U.S.C. § 2105(a) (2012).

**A007.**  However, Griffin submits that Judge Bruggink failed to provide any

explanation as to why Title 5 applied to Title 42 of the United States Code, the

Vaccine Act.  Judge Bruggink mistakenly failed to follow the clear guidance and

holding of the United States Supreme Court case, *American Trucking*, which

states that the function of a court in statutory interpretation cases, when

something is not defined, is "to construe the language so as to <u>give effect to the</u>

<u>intent of Congress</u>."  *United States v. American Trucking Ass'ns*, 310 U.S. 534,

542, 60 S. Ct. 1059, 1063 (1940).  (Emphasis added).  Judge Bruggink failed to

address the legislative intent in regard to the Vaccine Program; and, Judge

Bruggink failed to address whether the Special Master had appropriately applied

summary judgment law, which provides, among other things, that a court must

view the evidence presented on the motion in the light most favorable to the

opposing party.  The Notice of Appeal was filed October 14, 2014.  **A438**.

2

Griffin requests this Court to reverse the decisions of the special master and the United States Federal Court of Claims.  Respondent has asked this Court to uphold the decision against Griffin.  Griffin respectfully replies:

## III.  ARGUMENT

1.    Respondent continues to maintain that Title 5's "definition of employee" under 5 U.S.C. § 2105 should apply to this case.  Respondent's Appellee Brief ("Respondent's Brief") @ 10-11.  As previously outlined, in detail in Petitioner's Appellate Brief, Griffin disagrees that Title 5 applies, at all, to the Vaccine Program, which is found under Title 42.  Title 5 seems fairly clear that it's definition of "employee" applies **only** to Title 5.  Respondent provides no case law or authority for Title 5's application to the Vaccine Program.  Yet, Respondent remains steadfast in her argument that it ought to apply, even though Petitioner is not seeking federal employee benefits.  He is seeking Vaccine Program benefits under Title 42.

2.    Respondent continues to rely heavily on the contract between Fluor and the United States, especially the disclaimer of the intent to create an employer-employee relationship.  (Respondent's Brief @ 12, 21.)  Griffin submits that in every dispute as to whether there is a joint or *de facto* employer in a contractor setting, the opposing entity will always argue that the contract establishes the intent and that such intent was not one that set up an employee or-

3

employee relationship. That is why Courts need to look beyond the contract to determine the economic realities and the type of control exerted by the *de facto* employer. Respondent does not address *Harris v. Atty. Gen.*, 657 F. Supp. 2d 1 (D.D.C. 2009) that explained that "heavy reliance on the language of a contract to show that plaintiff was not an "employee" does little to advance this inquiry regarding the "analysis of the 'economic realities' of the work relationship." *Harris, supra* at *10. All contracts manifest the parties' intent, they do not necessarily reflect "economic realities." *Id.* Respondent further points out that Petitioner *was* an employee of Fluor. (Respondent's Brief @ 12.) Such argument does not negate the fact that one can have a co-employer, a joint employer or a *de facto* employer situation. Moreover, Griffin, also, filled in government forms indicating that he was a "civilian government employee." **A081.** Utilizing Respondent's logic, that would mean that he was an employee of the government. And, in regard to applying for workers compensation, such application does not make a person ineligible to participate in the Vaccine Program; rather, workers compensation benefits, if received, act as an offset to any benefits that one would be entitled under the Vaccine Program.

3.      In arguing against a more broad interpretation of "employee of the United States, Respondent argues, among other things, that the vaccine proceedings were meant to be "made as swift and uncomplicated as possible,"

4

and therefore it is reasonable to assume that Congress intended courts to use an easy-to-apply interpretation of the term "employee," rather than one that requires extensive fact-finding and analysis. (Respondent Brief @ 13.) The more accurate expression of Congress' intent is as follows: Congress designed the Vaccine Program to supplement the state law civil tort system as a simple, fair and expeditious means for compensating vaccine-related injured persons. The Program was established to award "vaccine-injured persons quickly, easily, and with certainty and generosity." *Cloer v. Sec'y of HHS*, 675 F.3d 1358, 1362 (Fed. Cir. 2012) (quoting H.R. Rep. No. 99-908, at 3 (1986)) The argument made by Respondent that these proceedings should be uncomplicated and that one could make assumptions about Congress' intent, is not only a gross overgeneralization, but, no support of such congressional intent of how to define "employee of the United States" exists. If Congress had been clear on how they wanted this term to be defined, we would not have this issue. By taking this position, Respondent ignores the next judicial step required by the United States Supreme Court case, *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992), that clearly intends that when a court is faced with the specific issue of defining the statutory use of the term "employee," and when the congressional intent does not indicate otherwise, the court should use the common law agency test. *Id.* Nowhere did Congress, state or indicate any intention that if defining a

statute becomes complex, it doesn't have to be done in the name of simplicity.
Nowhere does the legislative history indicate an intent that one can just look at
some other arbitrary code section and ignore relevant United States Supreme
Court precedent. Simplicity, as argued by Respondent in this case, does not
equate to fair and just. Further, this "simplicity" does not further the purposes of
the Act's desire to shield vaccine manufacturers from lawsuits, which is a major
purpose of the Act. The swift and uncomplicated vaccine proceeding was,
Griffin submits, for the benefit of the Petitioner. It was supposed to be swift so
that an injured party could obtain swift compensation so that they had the funds
to take care of themselves. The litigation was supposed to be uncomplicated and
less adversarial, again, so that a petitioner could easily and quickly obtain much-
needed compensation to deal with a vaccine injury. The "swift and
uncomplicated" was not intended to be a substitute for fair and just, judicial
analysis, and in this case, statutory interpretation/ construction.

4.      Respondent argues that the agency test should be limited in its
application to only statutes that explicitly regulate employment relationships.
(Respondent's Brief @ 13-14.) However, the United States Supreme Court, in
*Darden*, does not state such limitation and Respondent does not point to a case
that specifies specifically such limitation. In stark contrast, the United States
Supreme Court states that analyzing common law agency in instances such as

this one, where "employee" is left undefined, is a general rule.  In so doing, they analyzed "we have often been asked to construe the meaning of "employee" where the statute containing the term does not helpfully define it.  Most recently we confronted this problem in *Community For Creative Non-Violence v. Reid*… a case in which a sculptor and a nonprofit group each claimed copyright ownership in a statue the group had commissioned from the artist.  The dispute ultimately turned on whether, by the terms of § 101 of the Copyright Act of 1976, 17 U.S.C. § 101, the statue had been "prepared by an employee within the scope of his or her employment."  Because the Copyright Act nowhere defined the term "employee," we unanimously applied the "well-established" principle that

> "[w]here, Congress uses terms that have accumulated settled meaning under… the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms….In the past, when Congress has used the term 'employee' without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine." (Citations omitted." *Id.* @ 322-323.)

The United States Supreme Court concluded that while we supported this reading of the Copyright Act with other observations, the general rule stood as independent authority for the decision. *Id.* @ 323.  Looking at the United States Supreme Court's analysis in *Darden*, it is clear that it does not <u>only</u> apply to "statutes that explicitly regulate employment relationships."  Indeed, the

7

*Darden* case dealt with the Copyright Act. Similarly, this case deals with the Vaccine Act.

5.     Respondent continues her argument that common-law agency makes sense only in employment relationships where you would want to look beyond the formal arrangement in those type of cases, because an employer could avoid liability by hiring its employees through a contractor, while retaining control of their working conditions and such would seriously undermine the purpose of the relevant statutes. (Respondent's Brief @ 14.) Again, this argument is unsupported and fails to recognize the "general rule," as established by the United States Supreme Court; and, the fact that the government, in this case, by subcontracting work, which ordinarily in the past had been conducted by the Army, is, by definition, trying to avoid liability. But for the fact that there is this administrative remedy, which has to be exhausted first, *i.e.* the Vaccine Program, the Army could very well be liable for the harm done by the vaccine, because the vaccination was required by the Department of Defense. The difference in this case and some of the other cases cited, which applied the agency common-law, is that we do have a Vaccine Program, which is a no-fault program and shields not only the manufacturer, but doctors and, in this case, the Department of Defense from liability if Petitioner is eligible to participate in this Program. And, the Vaccine Program augments workers compensation programs.

6.      Respondent argues that Petitioner would read the term "employee of the United States" out of the statute and then further states that if Congress wanted to be as broad as possible, it would have allowed "all US citizens" who received vaccines overseas to bring claims under the Act.  (Respondent's Brief @ 14-15.)  Respondent has pulled a couple sentences out of the appellate brief and argues them out of context.  Petitioner's argument is a bit more refined.  Griffin is not requesting that "all United States citizens, who received vaccines overseas can bring claims under the Act."  He is arguing that under his factual circumstances of working for the United States government/DOD/Army, who exert a tremendous amount of control over the subcontractor, that they be deemed, at minimum, a joint employer to people like him and those similarly situated due to the amount of control exerted over his employment and the economic realities.  We are seeking a definition of "employee of the United States" that includes relationships with a *de facto* employer pursuant to common law agency law and submit that Griffin is, under the circumstances of this case, such employee.

7.      Respondent surmises that the reason Congress limited the right to bring the claim under the Act, when one receives a vaccine overseas to members of the Armed Forces, employees of the United States and their dependents, is that perhaps members of the military, and federal employees (and their

9

dependents) may be sent overseas to serve the interests of the United States and often have little or no say in where they go, how long they stay, and when they are allowed to return.  Respondent further argues that this is not true of private contractors like petitioner.  (Respondent Brief @ 15.)  No explanation is given, and no evidence exists that Mr. Griffin, as a private contractor could come and go as he pleases.

8.    Respondent argues that the applicable standard for review in this case, where there is a mixed question of law and fact should be reviewed under the arbitrary and capricious standard.  (Respondent's Brief @ 16-17.)  This argument fails to address the Federal Circuit cases cited by Petitioner regarding the standard of review in a summary judgment case.  This Court has stated that "when a district court *grants* summary judgment, we review without deference to the trial court whether there are disputed material facts, and we review independently whether the prevailing party is entitled to judgment as a matter of law."  *Suntiger, Inc v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir. 1999.)  (Emphasis in original.)  (*See also Winstar Corporation v. The United States*, 64 F.3d 1531, 1539 (Fed. Cir. 1995) stating "We review the Court of Federal Claims' grant of summary judgment under a *de novo* standard of review, with justifiable factual inferences being drawn in favor of the party opposing summary judgment.")

10

In Griffin's case, Respondent brought a Motion for Summary Judgment, which SM Millman *granted* and the Court of Federal Claims agreed. Consequently, the *de novo* standard of review is the correct standard to be applied in this case. Even if the Decision in this case was determined to be one of mixed question of law and fact, the Federal Circuit has likewise addressed this issue. Applying the Supreme Court ruling, the Federal Circuit determined, "We believe that the court is in the best position for making the determination of reasonableness. This court therefore holds that the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to *de novo* review." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1006-07 (Fed. Cir. 2012) citing to *Miller v. Fenton*, 474 U.S. 104, 113-114 (1985).

In this case, no evaluation of credibility or demeanor occurred and there were no factual determinations. Consequently, this Court is, likewise, in the best position to determine these legal issues *de novo.*

9.    Respondent, not surprisingly, agrees with SM Millman, that the military communicated what work, it wanted to be performed, but it was up to Petitioner to use his "independent judgment in performing those tasks." (Respondent's Brief @ 17-18.) Absolutely no basis exists for that conclusion

made by the special master and the evidence was to the contrary.  Yes, some of the documents indicate that the government should not provide direct supervision of contractor personnel.  However, this fails to address the factual scenario where there was no Fluor supervisor on site, as was the case with Mr. Griffin while he was in Afghanistan.  In the instances where there is no on-site supervisor, the supervision is quite different as analyzed in the appellate brief. The Army Regulation 715-9 (**A342-A378**) states, in relevant part, where the contractor company supervisor is <u>not located within the area of performance</u> … the COR will … <u>monitor the contract employee's performance</u> to ensure it is consistent with the terms and conditions of the contract."[1]  **A356 § 4-3**.  As Griffin's declaration states, the Fluor supervisor was not located within the area of his performance.  **A269 ¶ 7.**  Moreover, only the contracting officer has the authority to direct contractor personnel.  In short, the commander must manage contractor personnel through the contracting process.[2]  **A303**, **A355**.   The COR, which is the Base Mayor, oversaw all Standard operating procedures of Griffin's daily duties at all times, pursuant to the COR Handbook.

---

[1] Army Regulations 715-9.

[2] The Defense Contingency COR Handbook Chapter 2 page 30, September 2012.  *Also see* Army Reg, p.10.

10.    In discussing how Petitioner gets compensated, Respondent points out that the contract between Fluor and the United States provides only that Fluor may not increase an employee's base pay or allowances more than 10% per year or exceed compensation caps without written approval.  (Respondent's Brief @ 20.)  Point in fact, this type of contractual limits, Griffin, contends, shows the government exerting control over determinations of compensation.  In regard to the government having power to fire.  Griffin testified that the United States Army officials had control over his performance reviews and had the power to have him removed if they were not pleased with his work performance. **A269 ¶8**. SM Millman conceded that the evidence presented by Griffin (the contract) indicates that the United States Army officials <u>had the ability to inform Fluor of any poor performance and direct Fluor to "remove" contract personnel for failure to comply with the contract</u>.  **A028**.  These facts, taken together, shows that the Army had control over his performance reviews and had control over having him removed.  Griffin submits that "removed" is the same as being terminated.

11.    In regard to pointing out examples of factual findings made against Griffin, and therefore failing to view the evidence in the light most favorable to petitioner, (Respondent's Brief @ 25), Petitioner did provide examples of such factual findings made against him within his appellate brief.

13

12.    Last, Respondent argues that Griffin did not return back to the United States within six months relying on only one case decided by the Court of Federal Claims in *McGowan*, which is not precedent in this case as the decision is not a Federal Circuit determination.  As such, Petitioner would respectfully request that this Court determine this issue.  In addition to the fact that Griffin remained a United States citizen, subject to United States laws and federal taxes, among other things, the evidence shows that the date of his vaccination was January 31, 2012.  A40.  The statute requires him to "return to the United States not later than six months after the date of the vaccination", which would be around July 31, 2012.  However, his first onset symptom was around February 21, 2012. A40.  It was not until around March 9, 2012 that he went to the emergency room for treatment.  Thereafter, he went <u>back to work</u>. A41.  Around June 21, 2012, Griffin was readmitted. A042.  And, after treatment, he was again discharged to go back to work. A042-043.  <u>August 2, 2012</u> saw him readmitted again. A043.  By this time his six months had already expired, if Griffin was going to meet this statute's requirements, as interpreted by Respondent.  On August 26, 2012, Griffin underwent another medical evaluation in Dubai (A044) with discharge medication, including prednisone daily, among other things.  The point being is that Griffin was in and out of the hospital, back and forth to work and it was well beyond six (6) months before he realized he was not getting

14

better.  In fact, he was still being treated well after the expiration of the six

months.  To exacerbate things, he is in a foreign country, on a military base, and

it is not as if this Vaccine Program is well advertised  or common knowledge

such that Griffin would know that he needed to get back to the United States

within six months of his vaccine in order to be covered as a United States

citizen.  Information like that is not commonplace and it is certainly not well

known.  The rational behind *McGowan* does not apply to this case.  Respondent's

interpretation of eligibility to participate in the Vaccine Program leaves Mr.

Griffin without any remedy, despite the fact that the Vaccine Program is not

well-known, the timing in which one must return to the United States is

definitely not known by the common person, and, he was still being treated and

going back and forth to the hospital and work when the six-month requirement

expired.  Respondent's interpretation is not fair, just, or supported by the intent

of Congress.

## IV.    CONCLUSION AND RELIEF SOUGHT

Again, if SM Millman's and Judge Bruggink's decisions are upheld, a

class of potential petitioners will be excluded from this Vaccine Program solely

because they did not come back within 6 months despite the fact that they are

United States citizens, pay their federal taxes, worked side-by-side with our

armed forces.  It also means this class' remedy is to litigate against the

manufacturers.  This is not what Congress intended.  When one looks at (1) these cases that determine that a subcontractor can, in fact, have two employers and that the contract terms are not as important as the control exerted and the economic realities along with (2) Congressional intent and legislative intent for the Vaccine Program as well as (3) the evidence of this case, which clearly indicates that the United States Army/DOD had substantial control over Griffin, the facts should clearly tilt the scales of justice in favor of Griffin.  The facts, the law and the Congressional intent all support that Griffin should be found to be an eligible Petitioner as either an employee of the United States, a member of the Armed Forces or due to the fact that he never subjectively left the United States. Under *de novo* review, Griffin requests that this Court set aside the Decisions and enter a decision in his favor finding that, at minimum, he is an Employee of the United States.

Respectfully submitted,

February 11, 2015     /s/ Lisa A. Roquemore
Lisa A. Roquemore
Law Office of Lisa A. Roquemore
192001 Von Karman Ave. Suite 500
Irvine, Ca. 92612
(949) 622-5572

*Counsel of Record for Petitioner-Appellant*
*DAVID D. GRIFFIN*

𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰
𝔣𝔬𝔯 𝔱𝔥𝔢 𝔉𝔢𝔡𝔢𝔯𝔞𝔩 𝔆𝔦𝔯𝔠𝔲𝔦𝔱
*Griffin v. HHS*, 2015-5011

## CERTIFICATE OF SERVICE

I, Shelly Gannon, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Shelly Gannon was retained by LAW OFFICE OF LISA A. ROQUEMORE, Attorneys for Appellant to print this document.  I am an employee of Gibson Moore Appellate Services.

On **February 11, 2015** counsel for Appellant has authorized me to electronically file the foregoing **Reply Brief for Petitioner-Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

Lara Englund
U.S. Department of Justice
Civil Division, Torts Branch
1425 New York Avenue, N.W.
Washington, DC 20005
202-307-3013
lara.a.englund@usdoj.gov

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court within the time provided in the Court's rules.

February 11, 2015                    /s/ Shelly N. Gannon
                                     Shelly N. Gannon

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS**

1.    This Reply brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(C).

    X          This brief contains <u>3,753</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

               This brief uses a monospaced typeface and contains ____lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6).

    X          The brief has been prepared in a proportionally spaced typeface using <u>MS Word 2013</u> in a <u>14 point Times New Roman</u> font or

               the brief has been paired in a monospaced typeface using _____ _____in a ___characters per inch _____font.

February 11, 2015

               <u>/s/ Lisa A. Roquemore</u>
               Lisa A. Roquemore
               Counsel of Record for the Petitioner- Appellant
               Law Office of Lisa A. Roquemore
               192001 Von Karman Ave. Suite 500
               Irvine, Ca. 92612
               (949) 622-5572